UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEROME GRANT,   #1:18-CV-01166-FPG
                #1:14-CR-00134-RJA-HBS-6
            Petitioner,   DECISION AND ORDER

v.

UNITED STATES OF AMERICA,

            Respondent.

---

## INTRODUCTION

*Pro se* Petitioner Jerome Grant has filed a Motion to Vacate, Set Aside or Correct the Sentence Under 28 U.S.C. § 2255 ("Section 2255"). ECF No. 851. Respondent has filed a Motion to Dismiss the Section 2255 Motion as Untimely. ECF No. 855.  For the reasons discussed below, the Motion to Dismiss, ECF No. 855, is DENIED.

## BACKGROUND

On November 3, 2015, Grant appeared with counsel before U.S. District Judge Richard J. Arcara and pleaded guilty to Count 1 of the Indictment charging a violation of 18 U.S.C. § 846 (conspiracy to possess, with intent to distribute and to distribute, 500 grams or more of cocaine). ECF No. 319 (Plea Agreement). As part of the plea agreement, Grant agreed that his criminal history qualified him as a career offender, with an anticipated sentencing range of 188 to 235 months' imprisonment. ECF No. 319, ¶¶ 7, 10.

In a *pro se* letter dated October 3, 2016, Grant objected to his career offender designation, arguing that his sentencing range should only be 70 to 87 months' imprisonment. ECF No. 504. Subsequently, however, Grant's defense attorney submitted a sentencing statement that raised no objection to the career offender designation. ECF No. 570. On March 22, 2017, Judge Arcara

1

sentenced Grant to 188 months' imprisonment—the low end of the contemplated sentencing range. ECF No. 632 (Sentencing Transcript). Judgment was entered on March 28, 2017. ECF No. 588.

On April 17, 2017, Grant's attorney sought an extension of time to file a notice of appeal, which Judge Arcara granted on April 24, 2017. ECF Nos. 598, 603 & 604. Four months later, however, Grant entered into a Stipulation with the Government to dismiss his appeal with prejudice. *See United States v. Worthy (Grant)*, No. 17-1209 (2d Cir. Aug. 24, 2017), Dkt #20; *see also* ECF No. 855-1. In his supporting Affirmation, Grant stated in relevant part,

> I understand that I am now going back to my original position that I do not wish to appeal. I also understand that I will not be able to change my mind again. I understand that my appeal will be gone forever and no other court will ever be able to review my conviction and sentence.

*Id.* ¶¶ 4-5. Grant confirmed that he had "many letters back and forth" with his attorney and "had plenty of time to consider this withdrawal." *Id.* ¶ 6. He indicated that his attorney explained to him it was possible that pursuing the appeal "could adversely impact an expected cooperation credit motion by the Government[.]" *Id.* ¶ 8.

On August 24, 2017, the Second Circuit "so ordered" the parties' stipulation withdrawing the appeal with prejudice pursuant to Fed. R. App. P. 42. ECF No. 675; *see also United States v. Worthy (Grant)*, No. 17-1209 (2d Cir. Aug. 24, 2017), Dkt ## 25 & 26.

In a letter to Judge Arcara dated September 3, 2018, ECF No. 836, Grant requested a sentence reduction, arguing that *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018), established that he was improperly sentenced as a career offender. On September 13, 2018, Judge Arcara denied the request as outside the scope of 18 U.S.C. § 3582(c), but found that it could be construed as a Section 2255 motion to vacate the sentence. Accordingly, Grant was notified of the consequences of conversion and given 45 days to inform the Court of his decision. ECF No. 837.

Grant filed a form Section 2255 motion to vacate ("Petition") on October 11, 2018,[1] raising the following grounds for relief: (1) his guilty plea was unlawfully induced because the Government illegally used his September 7, 2004 conviction in New York State, Erie County Court for attempted third-degree criminal possession of a controlled substance in violation of New York Penal Law ("N.Y.P.L.") §§ 220.16(1)/110.00 as the basis for his career offender designation; (2) trial counsel was ineffective for failing to argue that use of the 2004 conviction was unlawful because only Application Note 1, not the actual text of United States Sentence Guidelines ("U.S.S.G.") § 4B1.2(b),[2] includes attempt or inchoate offenses; (3) because the N.Y.P.L. defines "controlled substances" more broadly than federal law does, his 2004 conviction could not be used as a predicate offense for career offender status; and (4) he was denied the right to appeal or collaterally attack his sentence.

Respondent responded to the Petition by filing a Motion to Dismiss it as untimely. ECF No. 855. Grant filed a Reply, asserting that the limitations period is "not valid when [there has been] a violation of the constitution or laws," which, in his case, was trial counsel's failure to object to his career offender sentence. ECF No. 859 at 3. He subsequently filed a number of motions for miscellaneous forms of relief related to his Petition. *See* ECF Nos. 860 (Letter Motion in Favor of Plaintiff and to Remand for Sentencing); 862 (Letter Motion to Set a Court Date for

---

[1] Because Grant is an incarcerated litigant proceeding *pro se*, the prison mailbox rule applies. *See Moshier v. United States*, 402 F.3d 116, 117 (2d Cir. 2005) (*per curiam*) (applying prison mailbox rule to Section 2255 petition). Under this rule, "[w]hen a prisoner is proceeding *pro se* . . . federal courts generally consider his or her petition for habeas corpus to have been filed as of the date it was given to prison officials for forwarding to the court clerk." *Adeline v. Stinson*, 206 F.3d 249, 251 n.1 (2d Cir. 2000) (*per curiam*). Here, Grant included a certificate of service with the Section 2255 petition, stating that he mailed it on October 11, 2018. ECF No. 855 at 10.

[2] U.S.S.G. § 4B1.2(b) provides that "[t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." Application Note 1 to U.S.S.G. § 4B1.2 states in relevant part that "[f]or purposes of this guideline," "'controlled substance offense' include [sic] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."

Re-Sentencing); 863 (Motion to Grant Judgment in Favor of Plaintiff and Re-Sentence Plaintiff to Correct Guidelines); 872 (Motion to Remove Judge Arcara from the 2255 and All Proceedings); 877 (Motion to Appoint Counsel); 888 (Motion to Grant the Petitioner's 2255 Motion); 903 (Motion for Recusal); & 906 (Motion to Supplement 2255). The Government has not responded to any of these applications.

## DISCUSSION

### I. The Petition

#### A. Timeliness

##### 1. The One-Year Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), "imposes a one-year statute of limitations on motions to set aside sentences imposed, *inter alia*, 'in violation of the Constitution or laws of the United States.'" *United States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (quoting 28 U.S.C. § 2255(a), (f)). The one-year period "shall run from the latest of—(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1)-(4).

### 2. Determining the Applicable Start Date of the Limitations Period

Grant does not suggest that he was impeded from filing in a timely fashion by any governmental action, and therefore subsection (2) of Section 2255(f) does not apply.

Subsection (3) also is inapplicable because Grant does not rely on a right that the Supreme Court has newly recognized and made retroactively applicable to cases on collateral review. Rather, he relies on two circuit court cases, *United States v. Winstead*, 890 F.3d 1082 (D.C. Cir. 2018), and *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), which do not satisfy Section 2255(f)(3). *See*, *e.g.*, *Smith v. United States*, No. CR 2:16-00030, 2020 WL 4211284, at *5 (S.D.W. Va. June 26, 2020) (habeas petitioner could not rely on *Winstead* to fulfill 28 U.S.C. § 2255(f)(3)), *report and recommendation adopted*, No. 2:16-CR-00030, 2020 WL 4208058 (S.D.W. Va. July 22, 2020).

According to Grant, subsection (4) applies because *Winstead* and *Townsend* effectively negate one of the two predicate convictions used to establish his career offender status—in other words, they constitute new "facts" supporting his claims. *See* ECF No. 851 at 9. Respondent counters that "[d]ecisions that change the legal significance of certain facts without modifying them do not qualify under [28 U.S.C. § 2255](f)(4)." *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (*en banc*) (holding that circuit court case which merely "altered the legal significance" of defendant's prior convictions "without amending convictions themselves" did not constitute a factual predicate for purposes of 28 U.S.C. § 2255(f)(4)) (citations omitted).

The Court agrees. Even accepting Grant's argument that *Winstead* and *Townsend* alter the legal significance of his prior conviction, they do not actually vacate or modify those convictions. Therefore, they are not "facts" for purposes of Section 2255(f)(4). *See Whiteside*, 775 F.3d at 184;

5

*see also Smith*, 2020 WL 4211284, at *5 (finding that *Winstead* did not constitute a new "fact" supporting habeas petitioner's claim for purposes of Section 2255(f)(4)).

Since subsections (2), (3), and (4) do not apply, the only possible start-date is found in subsection (1) of Section 2255(f). This requires the Court to determine the date that Grant's conviction became final.

### 3. Determining the Date on Which the Conviction Became Final

Section 2255(f)(1) does not define when a conviction becomes "final" for purposes of the limitations period. *Moshier*, 402 F.3d at 118. In *Clay v. United States*, 537 U.S. 522 (2003), however, "the Supreme Court held that a conviction becomes final when the Supreme Court 'affirms a conviction on the merits on direct review or *denies* a petition for a writ of *certiorari*, or when the time for filing a *certiorari* petition expires.'" *Id.* (quoting *Clay*, 537 U.S. at 527).[3] The Second Circuit has adopted the majority circuit view that "an unappealed federal criminal judgment becomes final for purposes of § 2255 . . . when the time for filing a direct appeal expires[,]" *Moshier*, 402 F.3d at 118 (citations omitted), that is, ten days after it is entered, *see* Fed. R. App. P. 4(b). Here, Grant obtained permission to file a belated notice of appeal but subsequently stipulated to dismissing the appeal voluntarily before the Second Circuit issued a decision on the merits. *See* ECF No. 675.

Notwithstanding the fact that Grant did file a notice of appeal, Respondent argues that the finality date for unappealed judgments should be used in his case. Respondent contends it is proper to characterize to Grant's judgment as "unappealed" because Grant "appears to treat the record as if he had never filed any notice of appeal." ECF No. 855 at 5, ¶ 12. Respondent notes that in

---

[3] Under 28 U.S.C. § 2101(d), the "time for appeal or application for a writ of *certiorari* to review the judgment of a State court in a criminal case shall be as prescribed by rules of the Supreme Court. Pursuant to Supreme Court Rule 13, a party has 90 days after the circuit court of appeals enters its judgment to file a petition for a writ of *certiorari*. *See* U.S. Sup. Ct. R. 13(1), (3).

Grant's Affirmation in support of the stipulated dismissal, he stated that he was "'going back to [his] original position that [he] do[es] not wish to appeal.'" *Id.* (quoting ECF No. 855-1, ¶5; brackets in original). In addition, Respondent cites Grant's assertion, in the Petition, "that he did not appeal from his judgment of conviction." *Id.* (citing ECF No. 851 at 1, ¶ 8 (checking "No" box in response to question, "Did you appeal from the judgment of conviction?")).

Respondent's argument ignores the fact that Grant *did* file a notice of appeal in the Second Circuit. Simply because the appeal was dismissed prior to a decision on the merits being reached does not mean that the judgment was "unappealed." Respondent cites no legal authority for such a conclusion, and the Court has found none.

In fact, contrary to Respondent's suggestion, the issue of when a conviction becomes final after the voluntary dismissal of a direct appeal is not so easily resolved. To date, it appears that only the Seventh Circuit has directly addressed the issue in a published decision—and did so in a manner that does not favor Respondent. *See Latham v. United States*, 527 F.3d 651, 651-52 (7th Cir. 2008). In that case, a habeas petitioner voluntarily dismissed his direct appeal but later moved to reinstate it on the basis that his attorney misled him about the consequences of dismissal. The district court ruled that the petition was time-barred in part because "a defendant who dismisses his appeal is not entitled to seek *certiorari*," and therefore the conviction became final on the date the circuit dismissed the appeal. The Seventh Circuit disagreed, finding that he was entitled to ask the Supreme Court to review the circuit's judgment dismissing his appeal by writ of *certiorari*. *Id.* Therefore, the Seventh Circuit held, Latham's conviction did not become final until the 90-day period for seeking *certiorari* expired. *Id.* at 652-53.

The Federal Circuit applied *Latham*'s reasoning to hold that the judgment entered on the plaintiff's unopposed voluntary dismissal of its appeal became final under the Equal Access to

7

Justice Act when the 90-day period for filing for *certiorari* expired. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 531 F.3d 1367, 1371 (Fed. Cir. 2008) ("*Impresa*"). The Federal Circuit found unavailing the Government's contention that, in light of the plaintiff's voluntary dismissal of the appeal, it was highly unlikely that *certiorari* would be granted. Citing *Latham*, the Federal Circuit stated that the likelihood of *certiorari* being granted was irrelevant. Rather, the question was whether the plaintiff was entitled to the 90 days to file such a petition, and "there is no blanket prohibition on the filing of a petition for *certiorari* after voluntary dismissal in the circuit court." *Id.*

The Third Circuit also has considered the issue, but did so in two non-precedential decisions that appear inconsistent with each other. *Contrast United States v. Sylvester*, 258 F. App'x 411, 412 (3d Cir. 2007) (reversing district court's grant of a certificate of appealability on this issue; finding it "not reasonably debatable" that a "conviction became final and the limitations period began to run when [the petitioner's] appeal was voluntarily dismissed"); *with United States v. Parker*, 416 F. App'x 132, 132 (3d Cir. 2011) (approving Government's withdrawal of untimeliness argument and agreeing with Government that there is "'no known precedent for the proposition that a criminal defendant who seeks voluntary dismissal of an appeal is foreclosed from filing a petition for *certiorari* challenging the dismissal'") (quotation to record omitted).[4] While *Parker* did not explicitly reject *Sylvester*, it clearly implied its disagreement.

Adding to the confusion, district courts in this Circuit have reached conflicting results. Some district courts in this Circuit have held that "[w]here a defendant files an appeal but does not

---

[4] One district court in this district has followed *Latham*'s approach. *See Clark v. United States*, No. 03-CR-0018 WMS VEB, 2010 WL 10836672, at *4-5 (W.D.N.Y. Sept. 28, 2010) (citations omitted). However, the circumstances of *Clark* are different from Grant's case insofar as the Second Circuit dismissed the Clark's appeal because he had failed to comply with a scheduling order, not because he had voluntarily stipulated to dismissing the appeal. *Clark*, 2010 WL 10836672, at *1. *Clark* appears to be the only case in the Second Circuit that has cited *Latham*.

8

pursue it, a conviction becomes final no later than when the defendant withdraws his appeal or the Second Circuit dismisses it." *Martinez v. United States*, No. 05 CR. 773 NRB, 2010 WL 4840085, at *2 (S.D.N.Y. Nov. 12, 2010); *accord Caro v. United States*, No. 09 Civ. 3120(GWG), 2009 WL 3273847, at *3 (S.D.N.Y. Oct. 14, 2009).

One district court decision in this Circuit, *German v. United States*, 209 F. Supp. 2d 288 (S.D.N.Y. 2002), agreed in *dictum* with Respondent's position that when a petitioner files a notice of appeal but later voluntarily withdraws it, finality occurs ten days after entry of the judgment of conviction. *Id.* at 292. In that case, however, the district court stated it was unnecessary to resolve the issue since the petition was untimely either way. *Id.* And, although it was not necessary to its decision, *German* (which predated *Latham*) specifically rejected the proposition that a petitioner who voluntarily dismisses an appeal may seek *certiorari* from the Supreme Court. *Id.* at 292-93. The district court reasoned that since the statute permitting a writ of *certiorari* to the Supreme Court contemplates a petition to "review" a judgment or decree of a court, *id.* at 292-93 (citing 28 U.S.C. § 2101; U.S. Sup. Ct. R. 13(1)),[5] and the "ruling from the Second Circuit . . . was not a ruling on the merits of [German's] judgment of conviction," *id.*, the petitioner "[i]n no sense . . . 'retain[ed]' any right to seek to have the Supreme Court 'overturn' his own request to withdraw his appeal." *Id.*; *contra, e.g.*, *Latham*, 527 F.3d at 653; *Parker*, 416 F. App'x at 132.

Outside this Circuit, district courts likewise have taken divergent approaches. *Contrast Muntasir v. United States*, No. CV 15-754 (KM), 2018 WL 1446406, at *7 (D.N.J. Mar. 22, 2018) (finding *Latham*'s reasoning persuasive and concluding that "the better rule . . . is that the limitations period begins to run 90 days after termination of a direct appeal, regardless of the manner in which the appeal was terminated"); *with Westmoreland v. Hetzell*, 840 F. Supp. 2d 1275,

---

[5] Neither 28 U.S.C. § 2101 nor U.S. Sup. Ct. R. 13 specify that a "judgment" for which *certiorari* is sought must be "on the merits."

9

1279 (N.D. Ala. 2011) (concluding that state habeas petitioner who voluntarily dismissed direct appeal "waived any basis for seeking review by the Supreme Court," and conviction became final on date appeal was voluntarily dismissed). "What becomes apparent from reviewing these cases . . . is that the inquiry ultimately turns on the related issue of whether a defendant who voluntarily dismisses his appeal is legally permitted to seek *certiorari* review from the Supreme Court." *McGee v. United States*, No. CR 109-035, 2013 WL 3096825, at *5 (S.D. Ga. June 18, 2013) (citations omitted); *see also id.* at *6 (electing to follow *Latham*).

In Grant's case, the choice of finality date determines whether the Petition is timely or time-barred. If Grant may not seek *certiorari* based on a voluntarily dismissed appeal, then the latest date the conviction became final is August 24, 2017, the date the Second Circuit dismissed the appeal pursuant to the parties' stipulation. The one-year statute of limitations would have expired on August 24, 2018, and the Petition, filed on October 11, 2018, would be time-barred. On the other hand, if the expiration of the 90-day period to seek *certiorari* from the Second Circuit's dismissal of the appeal is used as the finality date, then the statute of limitations began on November 22, 2017, and ended on November 22, 2018, making the Petition timely.

After surveying the case law, the Court finds *Latham*'s reasoning persuasive and concludes that Grant's conviction became final 90 days after the Second Circuit dismissed his appeal, notwithstanding the fact that Grant voluntarily stipulated to the appeal's dismissal. *Accord*, *e.g.*, *Muntasir*, 2018 WL 1446406, at *7; *McGee*, 2013 WL 3096825, at *5. To be sure, waiting out the period to file a *certiorari* petition in this case does not appear to serve much purpose. Since there is no merits-ruling from the Circuit, it seems unlikely the Supreme Court would grant *certiorari*. Nonetheless, *Parker* and *Impresa* suggest that a defendant who has voluntarily dismissed his appeal still might raise an issue as to the voluntariness of his waiver of appellate review; as both

courts observed, there is no precedent foreclosing that possibility. *Parker*, 416 F. App'x at 132; *Impresa*, 531 F.3d at 1371. Construing Grant's "*pro se* pleadings broadly, and interpret[ing] them 'to raise the strongest arguments that they suggest[,]'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quotations omitted), they can be read as complaining that trial counsel provided erroneous advice throughout Grant's criminal proceeding in regard to his decision to waive his right to appeal, both during the plea process and later on appeal.

Notably, however, the Seventh Circuit stated in *Latham* that the defendant's appeal "would have been timely even had he not sought the appeal's reinstatement." 527 F.3d at 652. According to the Seventh Circuit, the district court erroneously assumed that 28 U.S.C. § 1254 ("Section 1254"), which allows the Supreme Court to review judgments by *certiorari*, works like 28 U.S.C. § 1291 ("Section 1291"), which deals with appellate review of district courts' judgments and only allows aggrieved parties to seek such review. *Latham*, 527 F.3d at 652. The district court treated Latham as a prevailing party since he obtained what he requested—dismissal of the appeal—who could not seek review by the Supreme Court. *Id.* However, the Seventh Circuit explained, Section 1254 allows "any" party, including a prevailing party, to petition for *certiorari*; it also allows review by the Supreme Court regardless of whether the circuit court of appeals has issued a final decision. *Id.* at 652-53 (citing E. Gressman, *et al.*, SUPREME COURT PRACTICE 81-89 (9th ed. 2007)). "All that is necessary is that a case be 'in' the court of appeals." *Id.* at 653 (citing *Hohn v. United States*, 524 U.S. 236, 241 (1998)). The filing of a notice of appeal puts the case "in" the court of appeals and, even if some later event, such as the issuance of a mandate, puts the case "out" again, the Supreme Court has the authority to "issue a writ of *certiorari* to decide whether the case should have remained in the court of appeals rather than being ejected." *Id.* Thus, "[u]nder the approach of *Latham*, the procedural particulars of [the defendant]'s individual case would not

11

seem to matter." *Muntasir*, 2018 WL 1446406, at *6 (citing *Latham*, 527 F.3d at 652-53); *see also id.* at *6-7 (finding that conviction became final 90 days after Third Circuit granted Muntasir's motion to voluntarily dismiss appeal; applying *Latham* even though Muntasir "ma[de] no argument that his decision to withdraw the appeal was involuntary").

*Latham*'s approach provides the additional benefit of "[a] clear, easily administered deadline[,]" which "avoids embroiling the court in questions of whether and to what extent an individual defendant may be responsible (or to blame) for the termination of an appeal, the distinction between waiver and forfeiture, and the quality of legal advice that led to the decision." *Muntasir*, 2018 WL 1446406, at *6 (footnote omitted). The Court agrees with *Muntasir* that "[a] clear *ex ante* rule, in this context, better serves the goal of judicial economy, while giving litigants the benefit of the doubt and avoiding the creation of a procedural trap for the unwary." *Id.* (footnote omitted). Finally, the Court cannot discern a basis for distinguishing *Latham*, and Respondent has not offered one.

Accordingly, for all of the foregoing reasons, the Court rejects Respondent's arguments that Grant's conviction became final 10 days after the judgment of conviction was filed or, alternatively, on the date the Second Circuit dismissed the appeal pursuant to Grant's request to voluntarily withdraw it. Instead, the Court concludes that the conviction became final 90 days after the Second Circuit's dismissal order, when Grant's time to petition for *certiorari* from the Supreme Court expired. *See Latham*, 527 F.3d at 652-53. Grant's Petition is therefore timely.

## II. Motions for Miscellaneous Relief

### A. ECF Nos. 860, 862, 863 & 888 (Motions to Set a Resentencing Date)

ECF Nos. 860, 862, 863, and 888 seek the same relief—a resentencing proceeding based on Grant's claims in the Petition that he was erroneously sentenced as a career offender. They are,

in effect, duplicative of the relief requested in the Petition. Accordingly, ECF Nos. 860, 862, 863 and 888 are DENIED WITHOUT PREJUDICE to the Petition itself. *See, e.g., Davis v. Walsh*, No. 08 Civ. 6235 (LAK), 2008 U.S. Dist. LEXIS 74483, at *3 (S.D.N.Y. Sep. 4, 2008) ("Petitioner's second motion, which is supported by a copy of his habeas petition, is duplicative of the habeas application and entirely unnecessary. Accordingly, it too is denied, albeit without prejudice to the petition itself.").

### B. ECF Nos. 872 & 903 (Recusal Motions)

ECF Nos. 872 and 903 both seek recusal of Judge Arcara from the Section 2255 proceeding as well as from all future proceedings in Grant's criminal case. By sentencing him under the incorrect Guidelines, Grant argues, Judge Arcara caused him to suffer a miscarriage of justice and therefore he cannot be fair and impartial. Judge Arcara's rulings comprise the only conduct on which Grant bases his request for recusal. It is settled beyond debate, however, that recusal is not warranted where the only challenged conduct consists of a judge's rulings that are adverse to the party seeking recusal. *See*, *e.g.*, *In re Int'l Bus. Machines Corp.*, 618 F.2d 923, 929 (2d Cir. 1980) ("[W]e cannot agree that adverse rulings by a judge can per se create the appearance of bias . . . . A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias."). Because Grant has not adduced any colorable grounds for Judge Arcara's recusal, ECF Nos. 872 and 903 are DENIED WITH PREJUDICE. The Court notes, however, that Grant's instant Petition is being adjudicated by the undersigned, not Judge Arcara.

### C. ECF No. 877 (Motion to Appoint Counsel)

There is no constitutional right to representation in a habeas action. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Appointment of *pro bono* counsel is, therefore, within the Court's

discretion. The Court DEFERS ruling on ECF No. 877 until after Respondent has answered the Petition.

### D. ECF No. 906 (Motion to Supplement 2255)

Grant has requested to supplement his Petition with a copy of a certificate of conviction regarding a state law conviction that was used as a predicate offense for his career offender status. ECF No. 906 is GRANTED. The Court will treat ECF No. 906 as an exhibit to the Petition.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that ECF No. 906 (Motion to Supplement § 2255) is GRANTED, and it will be treated as an exhibit to ECF No. 851 (Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255). It is further

ORDERED that ECF No. 855 (Government's Motion to Dismiss Section 2255 Motion as Untimely) is DENIED. It is further

ORDERED that ECF Nos. 872 (Motion to Remove Judge Arcara from the 2255 and All Proceedings); and 903 (Motion for Recusal) are DENIED WITH PREJUDICE. It is further

ORDERED that ECF Nos. 860, 862, 863, 877 and 888 are DENIED as duplicative WITHOUT PREJUDICE to the Petition itself. It is further

ORDERED in accordance with Rules 4 and 5 of the Rules Governing § 2255 Cases in the United States District Courts, that Respondent shall file and serve an Answer to the Petition no later than forty-five (45) days from the date of this Decision and Order. The Answer shall respond to the allegations in the Petition and shall state whether Petitioner has used any other available federal remedies, including any prior postconviction motions under these rules, and whether Petitioner received a post-conviction evidentiary hearing in a federal court. In addition,

Respondent shall also file and serve within forty-five (45) days a Memorandum of Law addressing each of the issues raised in the Petition and including citations of relevant supporting authority. It is further

ORDERED that Respondent shall arrange to have the transcript of the plea proceeding transcribed and shall file it electronically with the Court when it serves its Answer and Memorandum of Law. It is further

ORDERED that within twenty (20) days of his receipt of the Answer and Memorandum of Law, Petitioner may file a Reply.

IT IS SO ORDERED.

Dated: December 22, 2020
       Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            Chief Judge
                                            United States District Court